UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00542-CHL

RICHARD C.,[1]                                                    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                  Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint filed by Plaintiff, Richard C. ("Claimant").  Claimant

seeks judicial review of the final decision of the Commissioner of Social Security ("the

Commissioner").  (DN 1.)  Claimant and the Commissioner each filed a Fact and Law Summary.

(DNs 17, 19.)  The Parties have consented to the jurisdiction of a Magistrate Judge to enter

judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an

appeal is filed.  (DN 13.)  Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I.      BACKGROUND

On or about February 5, 2019, Claimant filed an application for disability insurance

benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on

December 29, 2018.  (R. at 16, 90-91, 100-01, 110, 112, 114, 124, 134, 136, 225-28, 229-37.)  On

September 8, 2020, Administrative Law Judge Steven Collins ("the ALJ") conducted a hearing on

Claimant's application.  (*Id.* at 34-73.)  In a decision dated October 29, 2020, the ALJ engaged in

the five-step sequential evaluation process promulgated by the Commissioner to determine

whether an individual is disabled.  (*Id.* at 13-28.)  In doing so, the ALJ made the following findings:

---

[1] Pursuant to General Order 23-02, Claimant in this case is identified and referenced solely by first name and last initial.

1.      The claimant meets the insured status requirements of the Social Security Act through June 30, 2024.  (*Id.* at 18.)

2.      The claimant has not engaged in substantial gainful activity since December 29, 2018, the alleged onset date.  (*Id.*)

3.      The claimant has the following severe impairments: congestive heart failure, cardiomyopathy, morbid obesity, and hypertension.  (*Id.*)

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at 19.)

5.      [T]he claimant has the residual functioning capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds, sitting about six hours in an eight-hour workday and standing and/or walking about two hours in an eight-hour workday.  The claimant could occasionally climb ramps and stairs, could occasionally stoop, kneel, crouch and crawl.  The [claimant] could frequently balance [and] should never climb ladders, ropes [and] scaffolds.  The [claimant] should avoid concentrated exposure to extreme cold, as well as pulmonary irritants to include fumes, dust, odors, gases, and poor ventilation.  The [claimant] should avoid even moderate exposure to extreme heat and should avoid all exposure to dangerous machinery and unprotected heights.  (*Id.* at 20.)

6.      The claimant is unable to perform any past relevant work.  (*Id.* at 26.)

7.      The claimant . . . was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.   (*Id.* at 27.)

8.      The claimant has at least a high school education.  (*Id.*)

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (*Id.*)

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (*Id.*)

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 29, 2018, through the date of this decision.  (*Id.* at 28.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on June 21, 2021.  (*Id.* at 1-4, 222-24.)  At that point, the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2022); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Accordingly, Claimant timely filed this action on August 24, 2021.  (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities.  *See* 42 U.S.C. §§ 404-434, 1381-1383f.  An individual shall be considered "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2022).

### A.    Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that

if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B.      Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2022). In summary, the evaluation process proceeds as follows:

(1)     Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)     Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)     Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)     Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)     Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2022).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.    Claimant's Contentions

Claimant argued that the ALJ erred in his analysis of Claimant's physical impairments in formulating his assessment of Claimant's RFC. (DN 17-1 at PageID# 736.) Specifically, Claimant argued that the RFC is not supported by substantial evidence because the ALJ "improperly evaluated and dismissed" some of the medical opinion evidence in the record. (*Id.*) He also argued that the ALJ's RFC finding and analysis of the opinion evidence in the record were not based on substantial evidence and were instead based on mischaracterizations of the record. *(Id.)*

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c) (2022). The ALJ bases his or her determination on all relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1)-(4), 416.945(a)(1)-(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529 (2022).

Here, the ALJ found that Claimant's "functional abilities indicate a good tolerance for some level of work activity." (R. at 25.) He limited the Claimant to "standing and walking no more than two hours in an eight-hour day, [and] lifting up to ten pounds occasionally and less than

ten pounds frequently." (*Id.*)  The ALJ further limited Claimant to "only occasional climbing of ramps, stairs, occasional stooping, kneeling, crouching, crawling, frequent balancing, no climbing of ladders, ropes, [or] scaffolds" to "prevent exacerbation of his symptoms" and "no concentrated exposure to extreme cold [and] pulmonary irritants, no exposure to dangerous machinery and unprotected heights, and avoiding even moderate exposure to extreme heat given [Claimant's history of cardiac impairments." (*Id.*)  In support, the ALJ summarized Claimant's health history and treatment between January 1, 2019 and June 24, 2020. (*Id.* at 22-25.)  He noted that Claimant's records revealed a history of congestive heart failure, hypertension, and cardiomyopathy. (*Id.* at 22.)  The ALJ summarized that Claimant presented at the emergency room on January 1, 2019 and on April 7, 2019 with various symptoms, including chest pain, shortness of breath, and fatigue. (*Id.* at 22-23.)  The ALJ observed, however, that Claimant reported improvement in his symptoms on more than one occasion. (*Id.* at 22-24.)  The ALJ summarized that between January 21, 2019 and June 24, 2020, Claimant was following his cardiac medication regime, was not in congestive heart failure, denied symptoms of shortness of breath or fatigue, exhibited normal muscle tone in the extremities without pedal edema, and reported that his treatment provided significant relief of his symptoms. (*Id.*)  Ultimately, the ALJ acknowledged that "while it is reasonable that [Claimant] experiences some residual symptoms of fatigue and occasional shortness of breath with a lot of exertion," Claimant's allegations of severe functional limitations that prevent all work is not supported by the objective evidence. (*Id.* at 24.)  In support, he credited the opinions of state agency medical consult Robert Culbertson, M.D and Lisa Venkataraman, M.D., and state psychological consultant Danelle Stevens-Watkins, Ph.D., who opined that Claimant could perform work consistent with the restrictions imposed by the ALJ. (*Id.* at 25.)  The ALJ found those opinions persuasive because they were consistent with other evidence and were supported

internally by explanation.  (*Id.*)  The ALJ found not persuasive the opinions of Haneen Chahl, M.D. for various reasons that the undersigned will discuss more fully below.  (*Id.* at 26.)

Claimant argued that the ALJ erred in his treatment of the opinion of Dr. Chahl.  (DN 17-1.)  The new regulations for evaluating medical opinions are applicable to Claimant's case because he filed his application after March 27, 2017.  Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[3]   20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c).  The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions."  20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2).  An ALJ is not required to explicitly discuss how he or she weighed the other regulatory factors of relationship with the claimant, specialization, and other factors.  20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency

---

[3] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2022).

of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

To the extent that by arguing that the ALJ's analysis of Dr. Chahl's opinion constituted "legal error," Claimant intended to argue that the ALJ did not comport with the above procedural requirements, the Court finds otherwise. The ALJ's discussion does not rely on boilerplate language and contains a sufficient articulation of the supportability and consistency factors to comport with the regulatory requirements. The ALJ summarized Dr. Chahl's opinion regarding Claimant's abilities and then found that the same was not persuasive because it was "not supported by his treatment notes nor supported and consistent with the other evidence." (R. at 26.) For example, Dr. Chahl's treatment notes "show no complaints by [Claimant] of difficulty sitting, nor

8

recommendations by Dr. Chahl that [Claimant] elevate his legs while sitting, nor complaints of excessive fatigue documenting the need for additional breaks." (*Id.*) The ALJ noted that "the objective evidence fails to support Dr. Chahl's opinions" as "examinations routinely fail to document edema and treatment notes fail to routinely document complaints of excessive fatigue." (*Id.*) While Claimant may disagree with the ALJ's conclusion, the ALJ's discussion comports with the procedural requirements of 20 C.F.R. § 404.1520c, 404.1529 and is sufficiently detailed to allow the Court to assess the merits of the ALJ's analysis. Thus, the Court finds no procedural error requiring remand in the ALJ's analysis of the opinion evidence.

Claimant also challenged the ALJ's conclusion that Dr. Chahl's opinion was not consistent with the overall record. (DN 17-1 at 739-42.) In doing so, he argued that "there is no logical nexus between the objective evidence cited by the ALJ and his conclusion that Dr. Chahl's opinion was not supported by that evidence." (*Id.* at 740.) As a starting point, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). However, the Court examines the record as a whole, including whatever evidence "in the record fairly detracts from its weight," without "resolv[ing] conflicts in evidence or decid[ing] questions of credibility" to determine whether an ALJ's decision is supported by substantial evidence. *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (quoting in part *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990), and citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)). Thus, where an ALJ has "improperly cherry picked evidence" instead of "more

neutrally [ ] weighing the evidence," his or her decision is unlikely to be supported by substantial evidence. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *see Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("[S]ubstantiality of evidence evaluation does not permit a selective reading of the record.").

Claimant argued that the ALJ left out other information from the record that establishes Claimant "suffers from severe physical impairments which, by their very nature, produce symptoms of chronic fatigue and shortness of breath, rendering [Claimant] incapable of sustaining the rigors of an eight-hour workday." (DN 17-1 at 739-41.) Claimant's argument ignores that while the ALJ did not present a fulsome analysis of the records cited in his discussions of Dr. Chahl, earlier in his RFC analysis the ALJ did summarize the Claimant's treatment between January 1, 2019 and June 24, 2020. (R. at 22-24 (citing *id.* at 377-99, 400-83, 500-07, 508-52, 553-76, 577-609, 619-56).) In doing so, the ALJ acknowledged some of the symptoms Claimant was exhibiting during those visits, including ones emphasized by Claimant in his brief. The ALJ's RFC analysis as a whole demonstrates that the ALJ simply did not view the symptoms relied upon by the Claimant as supporting the level of limitations Claimant argued were appropriate. And at least some of the opinion evidence in the record concurred with the ALJ's interpretation of the record. As noted above, the ALJ found the opinions of the state agency physicians persuasive. This distinction is important because while an ALJ is not required to base his RFC on a medical opinion, *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015), the mere existence of symptoms or a diagnosis do not establish functional limitations. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)) ("But not every diagnosable impairment is necessarily disabling."); *Kennedy v. Astrue*, 247 F. App'x 761, 767 (6th Cir. 2007) ("[A] mere diagnosis of obesity does not establish either the

condition's severity or its effect on [claimant]'s functional limitations."). While Claimant argued that the ALJ erred by relying on objective examination findings that "fail[ed] to document persistent significant functional limitations beyond those accommodated by the [RFC]" (R. at 22), the Court finds no error in the ALJ's decision.

Ultimately, having reviewed the records relied upon by the ALJ and the Claimant's characterization of the same, the Court finds that this is a case where the ALJ properly resolved conflicts in the evidence and supported his decision, including his analysis of Dr. Chahl's opinion, with substantial evidence. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)). This Court could not overturn the ALJ's analysis without itself reweighing the evidence in a manner that is improper. While, as Claimant emphasizes, there is some evidence in the record that could support the opposite conclusion reached by the ALJ, that is not a proper area of inquiry for this Court. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman,* 693 F.3d at 714. The ALJ's analysis more than surpasses the threshold for substantial evidence, which is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").

Thus, the Court finds that the ALJ's RFC analysis, including his assessment of the opinion evidence, was supported by substantial evidence.

III.     **CONCLUSION AND ORDER**

For the foregoing reasons, the final decision of the Commissioner is **AFFIRMED**.  A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

March 27, 2023

cc:     Counsel of Record

12